UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DENNIS MIKEL, | ) |
| Petitioner, | ) ) ) |
| v. | ) No. 1:21-cv-02490-TWP-TAB ) |
| WARDEN, | ) ) |
| Respondent. | ) ) |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Dennis Mikel ("Mr. Mikel") filed a petition for a writ of habeas corpus challenging a New Castle Correctional Facility disciplinary proceeding identified as NCN 19-10-0137. For the reasons explained in this Order, Mr. Mikel's habeas petition is **denied,** and the **clerk is directed to enter final judgment** in Respondent's favor.

### I. Overview

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: (1) the issuance of at least 24 hours advance written notice of the charge; (2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; (3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and (4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

1

## II.     The Disciplinary Proceeding

On July 16, 2020, Mailroom Supervisor N. Ong issued a Report of Conduct charging Mr. Mikel with a violation of Code B 230 for counterfeit documents. Dkt. 8-4. The Report of Conduct states:

> At the above date and time, I, mailroom supervisor Ong, was notified about a[] request for interview form by UTM Nelson via email. UTM Nelson informed me that Offender Mikel, 927897 C4 205 had a request for interview form that I had answered and signed. At that time, UTM Nelson then brought down the request for interview form in question. Upon inspection of the request for interview form, I noticed that the handwriting on the form was not mine. The response and signature, of my name, were done by someone else. The offender was notified.

*Id*. The report also noted the collection of documents (the request for interview form dated 10/23/2019) and identified two witnesses: UTM Nelson and Case Manager Bevans. *Id*.

Mr. Mikel was notified of the charge and given a copy of the Screening Report. Dkt. 8-6. He pleaded not guilty and asked to call witnesses Ong, Campbell, and Corn. *Id.* He also requested camera footage of the mailroom from the day of the incident. *Id.*

The Disciplinary Hearing Officer ("DHO") requested the mailroom camera footage, but this footage did not exist because the camera in the mailroom was not operational. Dkt. 8-13. According to Mr. Mikel, Ong was no longer working for the Indiana Department of Correction ("IDOC") at the time of the disciplinary hearing. Dkt. 1 at 5. Prison officials attempted to obtain a witness statement from Ong or request his presence at the disciplinary hearing. Dkts. 8-12, 8-16. Unfortunately, the phone number they had for Ong was disconnected, and Ong did not respond to a certified letter from the prison. *Id.* As a result, the requested camera footage was not presented, and Ong did not testify or appear at the disciplinary hearing. Dkt. 8-11.

A disciplinary hearing was held on August 18, 2020. Dkt. 8-11. Mr. Mikel pleaded not guilty and stated:

> I am not guilty. I tried to send him 3 requests, no response. I tried to hand a request to him, he did not take it. I wrote, "take this problem to your case manager." Then, I printed his name "Ong." What you see is me dictating what Mr. Ong said so I could show my case manager. I told you what I done.

*Id*. The evidence presented at the hearing included staff reports, Mr. Mikel's statement, and a copy of the Request for Interview form. *Id.* Based on this evidence, the DHO found Mr. Mikel guilty of violating Code B 230. *Id*. The sanctions imposed included a deprivation of 90 days of earned credit time and a suspended demotion in credit class. *Id.*

### III.     Analysis

Mr. Mikel's petition raises three grounds for relief: 1) that he was denied video evidence; 2) that he was denied the right to call Ong and cross examine witnesses Bevans and Nelson, and 3) that prison officials failed to follow prison policies. Dkt. 1 at 4-5.

#### a.  Denial of Video Evidence

Mr. Mikel alleges that he was denied due process because he was not able to view the camera footage from the mailroom. Dkt. 1. Due process requires "prison officials to disclose all material exculpatory evidence," unless that evidence "would unduly threaten institutional concerns." *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011) (cleaned up). "The purpose of this rule is to ensure that the disciplinary board considers all of the evidence relevant to guilt or innocence and to enable the prisoner to present his or her best defense." *Id*. (cleaned up). Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780-81 (7th Cir. 2008). Nevertheless, prison administrators are also not obligated to

create favorable evidence or produce evidence they do not have. *Manley v. Butts*, 699 F. App'x. 574, 576 (7th Cir. 2017).

In this case, the DHO indicated there was no video to review because the prison did "not have a working camera for the area outside the mailroom window where offenders stand to get the mail." Dkt. 8-13. Prison officials were not required to produce evidence they did not have, and Mr. Mikel cannot obtain relief on this ground.

### b. Right to Call Witnesses

Mr. Mikel also alleges that he was denied due process because he was not permitted an opportunity to solicit statements or cross-examine three witnesses: Ong, Bevans, and Nelson. Dkt. 1 at 5.

"Inmates have a due process right to call witnesses at their disciplinary hearings when doing so would be consistent with institutional safety and correctional goals." *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003) (citing *Wolff*, 418 U.S. at 566). Nevertheless, "prisoners do not have the right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary." *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002). Further, prisoners do not have a right to confront and cross-examine witnesses. *Rasheed-Bey v. Duckworth,* 969 F.2d 357, 361 (7th Cir. 1992) (*citing Baxter v. Palmigiano*, 425 U.S. 308, 322-23 (1976); *Brown-Bey v. United States*, 720 F.2d 467, 469 (7th Cir. 1983)) ("Confrontation and cross-examination of witnesses in the context of a prison disciplinary proceeding are matters left to the sound discretion of prison officials.").

At the time of the disciplinary hearing, Ong was no longer employed with the IDOC and prison officials could not force him to testify. *See* dkt. 1 at 5. Prison officials were not required to provide Mr. Mikel with evidence they did not have. *Manley*, 699 F. App'x at 576. Furthermore, there is no indication that Ong's testimony would have been exculpatory, and any error in the

4

prison's failure to produce Ong would have been harmless. *See Jones*, 637 F.3d 847 (holding that prisoners are entitled to present "exculpatory" evidence). Additionally, the record reflects Bevans and Nelson submitted written statements, which proved to be non-exculpatory evidence. Dkts. 8-17 and 8-18.

To the extent that Mr. Mikel argues he was entitled to confront and cross-examine Ong, as Ong was the prison's "key witness" in these proceedings, *see* dkt. 1, p. 5, the Court notes that prisoners have no right to confront their accuser in a prison disciplinary proceeding. *See Baxter*, 425 U.S. at 322-23.

### c. Prison Policies

Finally, Mr. Mikel alleges that several prison officials failed to adhere to prison policies while processing his grievances. Dkt. 1 at 4-5. These are not grounds for habeas relief. *See, e.g.*, *Sandin v. Conner,* 515 U.S. 472, 481–82 (1995) (Prison policies are "primarily designed to guide correctional officials in the administration of a prison" and not "to confer rights on inmates."); *Estelle v. McGuire,* 502 U.S. 62, 68 at n.2 (1991) ("[S]tate-law violations provide no basis for federal habeas relief."); *Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (rejecting challenges to a prison disciplinary proceeding because, "[i]nstead of addressing any potential constitutional defect, all of [the petitioner's] arguments relate to alleged departures from procedures outlined in the prison handbook that have no bearing on his right to due process"); *Rivera v. Davis*, 50 F. App'x 779, 780 (7th Cir. 2002) ("A prison's noncompliance with its internal regulations has no constitutional import—and nothing less warrants habeas corpus review."). For this reason, the Court may not grant habeas relief based on any issue arising from a failure to follow prison policies. *Lauderdale-El v. Smith*, No. 2-19-CV-00053-JPH-DLP, 2020 WL 5748131, at *2 (S.D. Ind. Sept. 25, 2020).

## IV. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Mikel to the relief he seeks. Accordingly, Mr. Mikel's petition for a writ of habeas corpus must be **DENIED**. This action is **DISMISSED**.

Judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 7/1/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

DENNIS MIKEL
252 Kahl Ct.
Sellersburg, IN 47172

Frances Hale Barrow
INDIANA ATTORNEY GENERAL
frances.barrow@atg.in.gov